JONES, JUDGE:
The claimant, Black Rock Contracting, Inc., formerly Andersons’-Black Rock, Inc., filed this claim for extra compensation in the *13 amount of $48,722.46 arising out of highway construction under a contract with the respondent, Department of Highways, formerly State Road Commission. The project embraced the Camden Avenue approach to Interstate 77 in the City of Parkersburg, 2.133 miles in length, with the controversy bearing mainly on the western end of the eastbound lane for a distance of about 825 feet, which required the removal of the old Camden Avenue pavement. The overall construction was estimated to cost $2,196,951.80, including 333,800 cubic yards of unclassified excavation at $1.25 per cubic yard, amounting to $417,250.00. The prime contract was entered into on May 20, 1966, and work was to be completed by April 1, 1968. The concrete paving, estimated to cost $759,746.88, was subcontracted by the claimant to Chapin & Chapin, Inc.
The claim is in two parts: One for additional compensation in the amount of $5,152.50 for unclassified excavation on a portion of the project where an unstable condition was found under the old Camden Avenue pavement, requiring undercutting approximately five feet below the grade shown on the original plans; and the other for damages in the amount of $42,463.42 allegedly resulting from delays caused by the failure of the respondent to make test beams for the purpose of determining the readiness of the new pavement to support traffic and the requirement of the extra undercutting.
The subcontractor, Chapin & Chapin, installed a central concrete batch plant on the project, and started its paving operation on the westbound lane on April 29, 1968. The claimant also was on the job but excessive rains made practically all of the month of May unfit for either grading or paving. About the end of May or the first of June it became apparent that the material under old Camden Avenue was unsuitable and that undercutting would be necessary. The parties being in agreement, the undercutting was commenced by the claimant on June 3. Their agreement was reduced to writing under date of June 6, 1968, and a supplemental contract was signed by the parties. Estimates set out in the contract were for 1,900 cubic yards of unclassified excavation and 1,900 cubic yards of borrow excavation, both at the unit price of $1.25. By letter dated June 24, 1968, the claimant requested the respondent to cancel and not process further the executed supplemental agreement on the ground that conditions were much more difficult than anticipated. The respondent refused to reconsider the matter. The undercut excavation *14 was completed on June 21, 1968, but while it is not made clear in the record, it is apparent that this part of the project still required extensive preparation for paving as on June 20, 1968, Chapin & Chapin poured its last central or batch mix concrete and started removal of its batch plant. The paving subcontractor no longer had continuous work for the equipment, the undercut area not being ready, and the equipment was needed elsewhere. The paving was completed with ready-mix concrete purchased from a local supplier. The project was not completed until June, 1969, more than a year beyond the completion time specified in the contract, but no penalty was assessed against the claimant.
The claimant contends that the undercutting required by the respondent constituted a “changed condition” sufficient to entitle the claimant to additional compensation. Undercutting (excavation below the level specified in the original plans, usually required because of an unstable condition not anticipated) is not uncommon, and on this project there were a number of small undercuts besides the substantial one in question. Under the terms of Section 1.4.2. of the Standard Specifications for Roads and Bridges, if this undercut did not increase the quantity of unclassified excavation, a major contract item, by 25%, the claimant was not entitled to any alteration of the contract. In this case the additional excavation, 2061 cubic yards, slightly above the estimate of 1,900 cubic yards, amounted to less than 1% of the total; and if borrow material had not been required, a supplemental agreement would not have been necessary. There was no provision for borrow material in the original contract, so a supplemental agreement was prepared, including both excavation and borrow, and the same was executed and remained in effect, despite protests by the claimant.
The Court is constrained to believe that the claimant’s letter of June 24, 1968, written after completion of the undercut and asking for cancellation of the supplemental agreement, was triggered by two things, Chapin & Chapin’s decision on or about June 20, 1968, to disassemble and remove its batch plant, and the break in a water line at about the same time. The water line previously had been relocated by the claimant under the terms of the contract. The break flooded the area and resulted in considerable expense and delay. The claimant complains that this would not have happened if the undercut had not been required, but the claimant knew the exact *15 location of the line, and the Court believes that the break would not have occurred but for the negligent operation of the claimant’s equipment. The claimant complains of delay caused by other utility lines during the undercut, but there is nothing in the record to prove delay attributable to any utility lines except the water line and there is no adequate proof that the claimant ever did anything more with regard to utility lines than it was required to do under the terms of its contract.
With respect to test beams, the respondent perhaps could have been more flexible and accommodating, but there is absolutely nothing in the contract which would require test beams, and the respondent chose to hold the claimant to the 14 days’ curing time provided by Section 2.36.3 (S) of the Plans and Specifications. We find no assurance in the record that test beams would have permitted traffic to move over the pavement within three to five days as asserted by the claimant, nor that such a speed-up, if accomplished, would have meant that the central batch plant would have remained on the job.
The claimant attempts to make a point of the fact that the subject undercut was not provided for in the contract. Obviously, it was not; had the required excavation been shown on the original plans it would not have been an undercut. While the undercut was not contemplated at the time the contract was executed, we learn from the record that unstable material frequently is found under old pavement. The extra work did delay the project, but it did not result from a “changed condition” for which the respondent was accountable. Bad weather disrupted the claimant’s plans; and the claimant’s inability to adapt its schedule to unavoidable delays was an important factor. The Court recognizes that some excavation is more expensive than other and that ready-mix concrete is more expensive than batch mix, but the State does not guarantee a profit or the indemnification of a loss, and such additional costs do not justify additional compensation to this claimant unless there is a breach of contract or wrongful delay on the part of the respondent.
All complaints of any consequence in this case arise from the undercut, which was work required to be done by the claimant and not brought about or aggravated by anything done by the respondent. All work was paid for under the terms of the contract documents. The burden of proof in this case is on the claimant, and careful study *16 and consideration of the evidence does not pursuade the Court that there is sufficient proof in the record to support an award.
CLAIM DISALLOWED.